Karen PARKER, Plaintiff,

v.

HORTON'S FUNERAL SERVICE, INC., et al., Defendants.

No. CIV.A. 00–956 GK.

United States District Court, District of Columbia.

March 22, 2001.

Arthur B. Spitzer, American Civil Liberties Union of the National Capital Area, Washington, DC, for plaintiff.

Mark D. Dix, Office of the Corporation Counsel, Washington, DC, for District of Columbia.

Larry S. Williams, Williams & Associates, Washington, DC, for Horton's Funeral Service, Inc.

## MEMORANDUM OPINION

KESSLER, District Judge.

Before this Court is Plaintiff's Motion for Summary Judgment [# 12]. Upon consideration of the Motion and the entire record herein, for the reasons stated below, the Motion is **granted.**

## I. Statement of Facts [1]

On April 23, 2000, District of Columbia resident Tyrone Henderson Jr. ("Henderson Jr.") was murdered. At the time of his death, he was unmarried and had no children; his closest living kin were his mother, Plaintiff Karen Parker ("Parker"), and his father, Tyrone Henderson Sr. ("Henderson Sr."). Ms. Parker is about three years older than Mr. Henderson Sr.; they were never married. Ms. Parker and Mr. Henderson Sr. disagreed on the manner of burial for their son. The entity with possession of their son's remains, Defendant Horton's Funeral Service, Inc. ("Horton's"), initially followed Mr. Henderson Sr.'s burial instructions, in accordance with D.C.Code § 2–2813(a).

On May 2, 2000, Plaintiff brought the present lawsuit, challenging the constitutionality of D.C.Code § 2–2813(a), and moving for a preliminary injunction to prevent Horton's from burying Mr. Henderson Jr. in the manner requested by his father. The next day, on May 3, this Court ruled from the Bench, directing Horton's to bury Mr. Henderson Jr. in the manner requested by his mother Ms. Parker.[2] The funeral was held on the following day.

---

1. Because Plaintiff is the only party to have submitted a Statement of Facts Not Subject to Dispute, as required by LCvR 7.1(h), this Section is taken from Plaintiff's Statement.

2. Although the May 3, 2000 ruling by the Court effectively granted the motion for a preliminary injunction, Plaintiff technically withdrew its motion on May 15, 2000. *See* Plaintiff's Report to the Court, filed May 15, 2000.

On June 12, 2000, Plaintiff filed a motion for summary judgment, requesting that this Court declare unconstitutional the provisions of D.C.Code § 2–2813(a) that give preference to males over females, and permanently enjoin Defendants from carrying out those provisions. Defendant District of Columbia (the "District") did not file an opposition, but indicated that it "opposes plaintiff's motion for summary judgment on the same grounds set forth in its Memorandum of Points and Authorities in Opposition to Plaintiff's Motion for a Temporary Restraining Order." *See* District's Notice of Filing, filed June 20, 2001. Defendant Horton's has not filed any opposition.[3]

## II. Standard of Review

Under Fed.R.Civ.P. 56, a motion for summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, admissions, and affidavits show that there is no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## III. Analysis

The provision which governs how and by whose instructions decedents are to be buried in the District of Columbia, D.C.Code § 2–2813(a), provides that "[t]he *oldest* adult member of each class shall have prior claim of the human remains over the others in the same class, as follows: spouse, adult child, *father, mother,* adult brother, adult sister, adult grandchild, adult nephew or niece ..." D.C.Code § 2–2813(a) (emphasis added).

Section 2–2813(a), on its face, clearly and unambiguously gives priority to fathers over mothers in determining how their children are to be buried, regardless of the ages of the respective parents. Because the statute automatically prefers one gender over another, and the District has offered absolutely no rationale to justify this gender distinction,

the statute is by its plain language unconstitutional. *See, e.g., United States v. Virginia,* 518 U.S. 515, 531–34, 116 S.Ct. 2264, 135 L.Ed.2d 735 (1996); *Reed v. Reed,* 404 U.S. 71, 76–77, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971). The District does not argue to the contrary.

The District instead contends that D.C.Code § 2–2813(a) should be read as being limited and clarified by a regulation (D.C. Mun. Regs. tit. 17, § 3012) which the District argues removes the gender-based preference in § 2–2813(a). Enacted by the District's Department of Consumer Regulatory Affairs (the agency responsible for administering § 2–2813), the regulation provides that "[t]he funeral director or funeral services establishment retained by the individual standing highest in the following order of priority shall be entitled to take possession of the human remains in disputes: (a) spouse; (b) adult child; (c) parent ...," and that the "oldest member of a class has a prior claim over other members of the same class." D.C. Mun. Regs. tit. 17, § 3012.2–3012.3.

■ The regulation does indeed remove all reference to gender. However, a regulation enacted by an agency cannot rewrite an unconstitutional statute, especially when the regulation's ostensible modification of the statute is in direct conflict with the statute's plain language. *See, e.g., Chevron U.S.A., Inc. v. NRDC,* 467 U.S. 837, 843, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984) (holding that an agency's interpretation of a statute it is charged to administer receives deference only if the statute is "ambiguous"); *Board of Governors of Federal Reserve System v. Dimension Fin. Corp.,* 474 U.S. 361, 374–75, 106 S.Ct. 681, 88 L.Ed.2d 691 (1986) (holding that a federal agency "has no power to correct flaws that it perceives in the statute it is empowered to administer"); *Dixon v. United States,* 381 U.S. 68, 74–75, 85 S.Ct. 1301, 14 L.Ed.2d 223 (1965) (stating that a "regulation which ... operates to create a rule out of harmony with the statute ... is a mere nullity") (internal citations omitted); *Jordan*

---

**3.** Because a person is typically buried very shortly after his or her death, the sole issue raised in the lawsuit (the constitutionality of a statute governing the burial of District of Columbia residents) is "capable of repetition, yet evading review." *Christian Knights of the Ku Klux Klan v. District of Columbia,* 972 F.2d 365, 369 (D.C.Cir. 1992). Accordingly, Plaintiff's request for relief is still live, despite the fact that Mr. Henderson Jr. has already been buried.

*v. Secretary of Educ.*, 194 F.3d 169, 172 (D.C.Cir.1999). Accordingly, D.C. Mun. Regs. tit. 17, § 3012 is of no import.[4]

Because D.C.Code § 2–2813(a) expressly prefers one gender over another, and is clearly unconstitutional on its face, it is not subject to a narrowing construction that would avoid constitutional difficulties. *See Califano v. Yamasaki*, 442 U.S. 682, 693, 99 S.Ct. 2545, 61 L.Ed.2d 176 (1979) (internal citations and quotations omitted). Accordingly, the Court concludes that D.C.Code § 2–2813(a) must be **declared unconstitutional.**

## IV. Conclusion

For the reasons stated, Plaintiff's Motion for Summary Judgment is **granted.** Plaintiff is entitled to judgment as a matter of law that D.C.Code § 2–2813(a) is unconstitutional.

An Order will issue with this Opinion.

---

4. The District also contends, in a footnote, that D.C.Code § 2–2813 is made gender-neutral when read in conjunction with the Gender Rule of Construction (set forth in D.C.Code § 49–203), which states that "all the words [in any District of Columbia law] importing 1 gender include and apply to the other gender as well." *See* District's Mem. in Supp. of its Opp'n to Pl.'s Mot. for T.R.O. at 3 n. 1 (quoting § 49–203). However, since § 49–203 is only a "rule of construction," it does not apply to unambiguous statutes, such as § 2–2813. *See Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 254, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992). In addition, the Court would note that the Gender Rule of Construction was enacted *prior* to § 2–2813, and the District has not suggested any reason why § 49–203 should trump § 2–2813. Indeed, in the present case, the funeral service seemed to believe precisely the opposite, since it initially followed the instructions of a child's father, instead of the instructions of the child's *older* mother.